# United States Court of Appeals for the Fifth Circuit

_____

No. 24-50415

_____

United States Court of Appeals
Fifth Circuit

**FILED**
June 20, 2024

Lyle W. Cayce
Clerk

In re Sealed Petitioner,

*Petitioner*.

_____

Petition for Writ of Mandamus to
the United States District Court
for the Western District of Texas
USDC No. 1:24-CR-75-1

_____

Before Smith, Southwick, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

Before the court in this sealed case is a petition for writ of mandamus filed on behalf of a state agency (the Agency). In the petition, the Agency asks this court to direct the district court to vacate its repeated rulings annulling the Agency's attorney-client privilege pertaining to matters implicated in a grand jury investigation into alleged wrongdoing by senior Agency personnel. Specifically, the Agency seeks to override the district court's May 2024 order allowing grand jury testimony to proceed as outlined in the court's prior orders. Because the Agency fails to show a clear and indisputable right to relief, the Agency's petition fails. The Agency's emergency motion to stay grand jury proceedings currently set for early July—which rises and falls with its mandamus petition—necessarily fails for the same reason. Accordingly, we deny both the mandamus petition and the motion for a stay, and we dissolve the administrative stay this court entered

Certified as a true copy and issued
as the mandate on Jun 26, 2024

Attest:
Clerk, U.S. Court of Appeals, Fifth Circuit

pending our consideration of the Agency's requested relief. We deny as moot the Agency's separate motion to enforce the administrative stay.

**I.**

The Agency's petition arises in the context of an investigation initiated by the Federal Bureau of Investigation and the United States Department of Justice (collectively, DOJ) into alleged criminal wrongdoing by senior Agency personnel. The investigation, which has now evolved over several years, prompted the grand jury proceedings underlying today's case.

Earlier in its investigation, DOJ requested the district court to determine that certain Agency communications were categorically unprotected by the attorney-client privilege. DOJ supported its application with *ex parte* evidence that the court reviewed *in camera*. In a two-page order entered in October 2020, the district court granted DOJ's application, ruling that the Agency could not invoke the attorney-client privilege to avoid producing evidence and witness testimony regarding four general categories of information (the October 2020 Order). The district court's ruling concluded with two tersely-stated alternative grounds for support, *viz.*:

> [A]ny information relating to the four topics identified above are not protected from [DOJ]'s grand jury investigation by the attorney-client privilege. And even if the privilege applied, the crime-fraud exception to the attorney-client privilege obviates any applicable privilege as to any information relating to the four topics identified above.

The first three categories delineated in the October 2020 Order pertain to senior Agency personnel's interactions with another person targeted in the investigation, related entities, and federal and local law enforcement officials. The Agency does not challenge the district court's ruling as to these categories, so only the fourth category is presently at issue:

> Any actions or communications contemplated or undertaken by the [Agency], the [Agency head], or senior executive staff of the [Agency] to interfere in or obstruct the current Federal investigation into the matters listed in [the first three categories].

Two months after the court entered the October 2020 Order, DOJ served the Agency with a subpoena seeking materials within the order's ambit, and the Agency produced responsive documents.

In June 2021, the Agency sought to modify or rescind the October 2020 Order, challenging the order's breadth, attempting to assert additional "privileges" unaddressed by the order, and identifying "serious federalism concerns" implicated by the order. In August 2021, the district court granted the Agency's motion in part and denied it in part (the August 2021 Order).[1] Doing so, the district court explained its earlier rationales for entering the October 2020 Order. Following *In re a Witness Before the Special Grand Jury 2000-2*, 288 F.3d 289 (7th Cir. 2002) (*Ryan*), the court reiterated its view that the attorney-client privilege does not extend "to government attorneys in the context of criminal investigations," 288 F.3d at 295, such that the four categories of information sought by DOJ did not implicate the privilege at all.[2] And even if the privilege generally applied to government attorneys in

---

[1] The district court granted the motion to the extent that the Agency sought to raise privilege objections to particular documents it had not yet produced to DOJ. However, the district court denied the Agency's remaining requests: to revoke or modify the October 2020 Order; to return Agency documents already produced; to disclose DOJ's sealed *ex parte* application and evidence leading to the October 2020 Order; to enter a protective order over the Agency's productions; and to allow Agency counsel to attend interviews between DOJ and the Agency's former or current employees.

[2] In reaching its conclusion, the district court aligned itself with the Seventh Circuit on an issue to which this court has not spoken, until today. *Compare Ryan*, 288 F.3d at 290 (holding that attorney-client privilege cannot be asserted by a state-government attorney in the context of a federal criminal investigation) *with In re Grand Jury Investigation*, 399 F.3d

this setting, the court found that DOJ had satisfied its prima facie burden to show that the crime-fraud exception nullified any assertion of privilege by the Agency.

In April 2024, DOJ served grand jury subpoenas on two senior Agency employees.[3] These subpoenas make clear that the witnesses will be asked to testify about matters implicating the categories of information articulated in the October 2020 Order. The Agency moved to quash the subpoenas on April 23, 2024, again requesting that the district court reconsider the scope of its October 2020 Order.

The district court denied the Agency's motion to quash on May 9, 2024 (the May 2024 Order). The court refined its October 2020 Order to make clear that the witnesses may assert the attorney-client privilege as to matters "outside the [October 2020] Order" if they "show the information in question is privileged because the [Agency] is their client, not simply their employer, and that there is no suspicion of government misconduct." But the district court also reiterated its reliance on *Ryan* to support a blanket

_____

527, 528, 536 (2d Cir. 2005) (holding that state attorneys may assert attorney-client privilege in a grand jury proceeding); *see also In re Grand Jury Subpoena*, 909 F.3d 26, 31–32 (1st Cir. 2018) (declining to adopt *Ryan*'s rule, but suggesting that, under circumstances analogous to this case, the court would consider applying *Ryan*'s categorical bar to the state's assertion of privilege). Two other circuits have held that the attorney-client privilege does not apply to grand jury subpoenas to *federal* government attorneys and officials. *See In re Bruce R. Lindsey (Grand Jury Testimony)*, 158 F.3d 1263, 1278 (D.C. Cir. 1998); *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 924 (8th Cir. 1997).

[3] The subpoenas originally compelled the witnesses to appear on May 7, 2024. The parties agreed to continue that date to June 4, 2024. The date was again continued, to July 2, 2024, due to a medical emergency and this court's administrative stay, entered May 28, 2024. Notwithstanding the administrative stay, DOJ reissued the grand jury subpoenas on June 4, 2024, compelling the Agency employees to appear July 2. These new subpoenas precipitated the Agency's motion to enforce the administrative stay.

disallowance of the attorney-client privilege related to misconduct of state officials within the scope of the grand jury investigation.

The Agency countered with this petition for writ of mandamus, asking this court to direct the district court to vacate its May 2024 Order—and by extension, its prior privilege orders—vitiating the Agency's attorney-client privilege and applying the crime-fraud exception to the grand jury testimony sought by DOJ.[4]  The Agency also filed an emergency motion to stay the grand jury proceedings so this court "may fully consider the pending petition for a writ of mandamus."  We issued an administrative stay on May 28, 2024, pending our resolution of the Agency's requests for relief.

## II.

This court has discretion to issue a writ of mandamus[5] when the petitioner "has no other adequate means to attain the relief he desires," the court is "satisfied that the writ is appropriate under the circumstances," and the petitioner demonstrates a "clear and indisputable right to the writ." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 499 (5th Cir. 2019) (cleaned up and

––––––––––––––––––––––––––

[4] Though the Agency's petition for writ of mandamus ostensibly challenges the district court's May 2024 Order denying the Agency's latest motion to quash, it is effectively a challenge to the district court's October 2020 Order, i.e., it seeks to have this court override the district court's several denials of the Agency's efforts to reconsider that order.  The Agency has not previously challenged the October 2020 Order, or the district court's August 2021 Order, in this court.

[5] The Agency's motion to stay the grand jury proceedings resolves based on our analysis of the mandamus petition.  To obtain a stay, a party must show (1) a strong likelihood of success on the merits of the appeal, (2) the movant would suffer irreparable injury absent a stay, (3) a stay would not substantially harm other parties, and (4) a stay would serve the public interest.  *In re Deepwater Horizon*, 732 F.3d 326, 345 n.15 (5th Cir. 2013).  The first two are "the two most critical factors favor granting a stay." *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 194 (5th Cir. 2023) (citation omitted).  Because the underlying mandamus petition fails to merit relief, there is no likelihood of success of the Agency's stay motion.  Accordingly, we hereafter analyze only the mandamus petition.

citations omitted). In addition to its traditional provenance as a "supervisory" writ, this Court may issue the writ in an "advisory" capacity "as a one-time-only device to 'settle new and important problems' that might have otherwise evaded expeditious review." *In re EEOC*, 709 F.2d 392, 394 (5th Cir. 1983) (citations omitted).[6] Whether supervisory or "advisory," the requirement that a petitioner demonstrate a "clear and indisputable right to the writ" remains. *In re JPMorgan Chase & Co.*, 916 F.3d at 500. "Satisfying this condition require[s] more than showing that the district court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion." *Id.* (citation omitted). The petitioner "'must show not only that the district court erred' 'but that it *clearly and indisputably erred*.'" *Id.* (citation omitted and emphasis in original).

Indeed, this court may "deny the writ as a matter of prudence even when the district court erred[.]" *In re Paxton*, 60 F.4th 252, 260 (5th Cir. 2023) (citation omitted). Such "prudential denials involve a district court's mistaken resolution of a novel or thorny question of law." *Id.* (collecting cases); *see also Landmark Land Co. v. Off. of Thrift Supervision*, 948 F.2d 910, 911 (5th Cir. 1991) (denying the writ after the erroneous interpretation of a "question of first impression"). "These types of mistakes, made under difficult circumstances, may not rise to the level of a clear and indisputable error, as required for mandamus relief." *Paxton*, 60 F.4th at 260 (citing *In re JPMorgan Chase*, 916 F.3d at 504).

## III.

To support its mandamus petition, the Agency contends that the district court erred (A) by determining that the Agency cannot interpose the

---

[6] The Agency argues in its stay motion that an "advisory" writ of mandamus is appropriate here.

attorney-client privilege to avoid complying with DOJ's subpoenas; and (B) by ruling that even if the attorney-client privilege is viable, the crime-fraud exception vitiates the privilege as to the fourth category of evidence in the October 2020 Order. Neither basis supports a clear and indisputable right to the writ.

## A.

In its October 2020 Order, and carried forward in its August 2021 Order and its May 2024 Order, the district court held "that attorney-client privilege will not apply to information related to state misconduct or targeted at wrongdoing by state officials[.]" The district court's ruling was grounded upon *Ryan*, 288 F.3d 289. There, the Seventh Circuit rejected attorney-client privilege claims asserted by the chief legal counsel of the Illinois Secretary of State's office in response to a federal investigation of then-Governor George Ryan. That court reasoned:

> It would be both unseemly and a misuse of public assets to permit a public official to use a taxpayer-provided attorney to conceal from the taxpayers themselves otherwise admissible evidence of financial wrongdoing, official misconduct, or abuse of power . . . . [W]hen another government lawyer requires information as part of a criminal investigation, the public lawyer is obligated not to protect his governmental client[,] but to ensure its compliance with the law. . . . Therefore, when another government lawyer requires information as part of a criminal investigation, the public lawyer is obligated not to protect his governmental client but to ensure its compliance with the law.

288 F.3d at 293 (citation omitted). Going further, the *Ryan* court stated that "the policy reasons behind the attorney-client privilege do not justify its extension to government attorneys in the context of criminal investigations," and the court therefore declined to recognize the privilege when it "impair[s]

legitimate federal interests and provide[s] 'only speculative benefits' to a state official." *Id.* at 295 (citation omitted).

The Agency argues that in adopting *Ryan*, the district court joined the "wrong side" of "a significant circuit split." The Agency implores us instead to adopt the Second Circuit's approach in *In re Grand Jury Investigation*, 399 F.3d 527, 533–36 (2d Cir. 2005). There, the Second Circuit addressed the assertion of attorney-client privilege by the Connecticut Governor's former chief legal counsel during grand jury proceedings. Notably, the Governor's counsel invoked the privilege based on conversations "with [the Governor] and other members of his staff on the subject of the receipt of gifts and the meaning of related state ethics laws." *In re Grand Jury Investigation*, 399 F.3d at 529. The court held that the attorney-client privilege applied to state government agencies' communications that "were in confidence and conducted for the purpose of providing legal advice[.]" *Id.* at 529–30. Specifically, it reasoned that the attorney-client privilege was necessary in that scenario to encourage government officials "to seek out and receive fully informed legal advice." *Id.* at 529–30, 533–34.

To the extent that the district court relied on *Ryan* to espouse a categorical, and prospective, vitiation of the Agency's attorney-client privilege simply "as part of a criminal investigation," *Ryan*, 288 F.3d at 293, it was error to do so. A federal investigation into potential wrongdoing by state government officials, in itself, does not annul the privilege's protection of otherwise-covered attorney-client communications. *Cf. In re Grand Jury Subpoena*, 909 F.3d 26, 31–32 (1st Cir. 2018) ("[W]hen the federal grand jury is investigating potential crimes that state officials . . . may have committed," an overly-broad application of the privilege may operate to "facilitate[e] rather than deter[] crime."). Contra *Ryan*'s holding that the privilege does not "exten[d] to government attorneys in the context of criminal

investigations," 288 F.3d at 293, "it [is] best to proceed cautiously when asked to narrow the privilege's protections in a particular category of cases." *In re Grand Jury Investigation*, 399 F.3d at 531.

Much as it does in non-governmental settings, the attorney-client privilege protects agencies' communications that "were in confidence and conducted for the purpose of providing legal advice[.]" *Id.* at 529–30. If anything, "the traditional rationale for attorney-client privilege applies with special force in the government context." *Id.* at 534. Government officials who are expected to uphold and execute the law—and who may face criminal prosecution for failing to do so—must be able freely to seek and receive informed legal advice. *Id.* The attorney-client privilege thereby operates to effectuate, not hinder, the public interest. Accordingly, we "reject the categorical rule that a state government has no attorney-client privilege that can be invoked in response to a grand jury subpoena." *In re Grand Jury Subpoena*, 909 F.3d at 32.

Nonetheless, it does not follow that the Agency's mandamus petition is well-taken. Though effectively advocating its position, the Agency concedes that "[t]his circuit has not weighed in on this issue" and "at least two of [our] sister circuits have [arrived] at opposite conclusions." Those points are fatal because we often deny the writ where "a district court [makes a] mistaken resolution of a novel or thorny question of law." *In re Paxton*, 60 F.4th at 260. Indeed, we previously denied the writ where "the district court, with the best of intentions, misapplied the law" on a legal question involving a circuit split. *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008) (per curiam). The same result obtains here: We cannot say that the district court's mistaken reliance on *Ryan*, "made under difficult circumstances," rises "to the level of a clear and indisputable error as required for mandamus relief." *In re Paxton*, 60 F.4th at 260 (citation omitted).

**B.**

This conclusion is buttressed by the district court's sound alternate holding that the crime-fraud exception to the attorney-client privilege operates to nullify the Agency's assertion of the privilege as to "actions or communications contemplated or undertaken . . . to interfere in or obstruct the current [f]ederal investigation[.]" After all, "it is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989) (cleaned up). Our holding that the attorney-client privilege retains its force in the governmental setting in no way "derogates from traditional doctrines, such at the crime-fraud exception . . . to limit egregious abuses of the protections that the privilege affords." *In re Grand Jury Investigation*, 399 F.3d at 535.

To invoke the crime-fraud exception here, DOJ was required to "establish[] a prima facie case that the attorney-client relationship was intended to further criminal or fraudulent activity." *In re Grand Jury Subpoenas*, 419 F.3d 329, 335 (5th Cir. 2005). In its October 2020 Order, and reiterated several times since, the district court agreed with DOJ that there is "reason to believe that evidence of federal crimes alleged in [DOJ's] motion is in the possession, custody, or control of current and former employees" of the Agency. Mindful that not the first question has been asked of either subpoenaed witness, we cannot say that the district court erred in its determination on this point, much less that it "*clearly and indisputably erred.*" *In re JPMorgan Chase & Co.*, 916 F.3d at 500 (citation and internal quotations omitted; emphasis in original). To the contrary, based on the record before us, including DOJ's *ex parte* evidence, it is plain that the crime-fraud exception to the privilege is implicated, at least with regard to the general categories of information delineated in the district court's October

2020 Order. The Agency thus fails to show any entitlement to a writ of mandamus.[7]

* * *

Notwithstanding our disagreement with the district court's reliance on *Ryan* regarding the scope of the Agency's attorney-client privilege, the court's May 2024 Order sets forth a prudent, and familiar, framework to proceed with the subpoenaed witnesses' testimony. That order makes clear that the witnesses "ha[ve] the right to raise any legitimate, good faith objection[s] based on privilege," if they "show the information in question is privileged because the [Agency] is their client, not simply their employer . . . . If the DOJ then wants to pursue that line of questioning," DOJ may file a motion to compel, allowing the district court to "review each objection on a question-by-question basis." We simply clarify that government attorneys may assert the privilege as to state agency communications that "were in

_____

[7] As alternative arguments in its petition, the Agency gestures to constitutional concerns stemming from the district court's application of 18 U.S.C. §§ 1512, 1513, the bases for its crime-fraud exception ruling. The Agency argues that the district court's application of these statutes stretches them beyond Congress's powers under the Commerce Clause, and in any event, DOJ is attempting to police the hiring and firing practices of a state agency, running contrary to the Tenth Amendment. Neither argument justifies issuance of a writ of mandamus.

First, as DOJ points out, at least one of our sister circuits has held that § 1512 does not "derive its authority from Congress's authority over interstate commerce, but from Congress's power to maintain the integrity of federal proceedings and investigations." *U.S. v. Emery*, 186 F.3d 921, 924–25 (8th Cir. 1999) (citations omitted). Indeed, §§ 1512 and 1513—which deal with "tampering with" and "retaliating against a witness, victim, or informant," respectively—are "conducive to the due administration of justice," *Jinks v. Richland Cnty., S.C.*, 538 U.S. 456 (2003), and thus fall squarely within the Necessary and Proper Clause's ambit. And the Tenth Amendment does not insulate state agencies from complying with federal law, employment or otherwise, governing alleged *wrongful* terminations. The district court's error—if any—on either of these points was not clear and indisputable, as is required for the writ.

confidence and conducted for the purpose of providing legal advice[.]" *In re Grand Jury Investigation*, 399 F.3d at 529–30. If an assertion of privilege is made, the same framework likewise may resolve disputes regarding the crime-fraud exception to the privilege. All this we leave to the sound discretion of the district court.

## IV.

Because the Agency has failed to show a clear and indisputable right to a writ of mandamus, its petition is DENIED. The Agency's emergency motion to stay the grand jury proceedings is DENIED for the same reasons explained above.

We likewise DISSOLVE the administrative stay this court entered May 28, 2024. The Agency's motion to enforce the administrative stay is DENIED AS MOOT. Finally, the Agency's motion to maintain the filings in this case under seal is GRANTED, except that the Clerk is DIRECTED to publish this opinion, *see* 5TH CIR. R. 47.5, five days after its issuance.